UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-cv-23762-LENARD/GOODMAN

CLUB MADONNA, INC. and
LEROY GRIFFITH,

      Plaintiffs,

v.

CITY OF MIAMI BEACH,

      Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON**
**DEFENDANT'S VERIFIED ATTORNEY'S FEES MOTION**

In his song "Consequences,"[1] blues guitarist and songwriter Robert Cray had plenty to say about the results of making mistakes: "Because there's consequences for what we do, consequences for me and you." And, a little later in the song, Mr. Cray provided further detail: "We're gonna have to pay the price, baby, Yeah, We're gonna suffer the consequences, Yeah."

The basic notion of consequences is at the heart of the motion pending before the Undersigned. The City of Miami Beach (the "City") wants Plaintiffs to pay the attorney's fees it incurred in the defense of this case. Initially, the City also asked for a fees award against Plaintiffs' former counsel, Richard Wolfe ("Wolfe"), but he resolved

---

[1]      From the *Midnight Stroll* album (Mercury 1990).

the claim against him at mediation. The City has already won the case, as the District Court granted its Motion to Dismiss the Amended Complaint [ECF No. 45] and entered a judgment in the City's favor [ECF No. 51].

United States District Judge Joan A. Lenard referred [ECF No. 54] the City's verified motion for attorney's fees [ECF No. 53] to the Undersigned. The Undersigned initially granted [ECF No. 61] an unopposed motion to bifurcate filed by Plaintiff Club Madonna, Inc. (the "Club") and Wolfe. The Undersigned later determined that bifurcation would be inefficient [ECF Nos. 80; 82], so this Report and Recommendations addresses both the City's *entitlement* to fees and the appropriate *amount*.

Before evaluating the merits of the City's motion, however, the Undersigned required the parties to attend mediation. [ECF No. 76]. On April 29, 2015, the mediator, Thomas E. Scott (of the Cole, Scott & Kissane firm), issued his Final Mediation Report, which stated that the matter was settled in part, specifically with regard to the City's claim for fees against Wolfe. [ECF No. 79]. With the City's claim under 28 U.S.C. § 1927 (which authorizes fees against *attorneys* in certain limited situations) against Wolfe resolved, this Report and Recommendations will address the City's claim for fees against the Club and its principal, Leroy Griffith ("Griffith"), pursuant to 42 U.S.C. § 1988(b) and the Court's inherent authority.

For the reasons outlined below, I am **respectfully recommending** that the District Court award the City $53,730.30 in reasonable attorney's fees, plus additional fees incurred litigating the fees motion after the initial fees request was submitted.[2]

## I.   BACKGROUND

The Club and Griffith (collectively, "Plaintiffs"), first sued the City (as well as several City Commissioners and City Attorneys) in 2008 seeking damages for constitutional violations and for declaratory and injunctive relief under 42 U.S.C. Sections 1983, 1985, and 1988 (the "2008 Complaint"). [ECF No. 5-1, pp. 12-22]. The 2008 Complaint stemmed from the City's ordinances prohibiting alcoholic beverage establishments from providing total nudity or sexual conduct. Specifically, the Club claimed that it was deprived the right to fairly and equally access the legislative process to have its own proposed ordinance -- allowing it to sell alcohol to its patrons -- heard before the City Commission without first paying a fee of $30,000.00. [*Id.*].

The 2008 Complaint was resolved by the parties entering into a Settlement Agreement (the "Settlement Agreement"), which stipulated that the City agreed to place the Club's proposed ordinance on the City Commission's agenda, and that the

---

[2]     No party can be entitled to a double recovery of attorney's fees. Neither the City nor Plaintiffs informed the Court about the details of the settlement between Wolfe and the City or what amount of fees -- if any -- Wolfe agreed to pay the City in relation to this litigation. However, if the City did recover attorney's fees from Wolfe, then Plaintiffs may file a motion seeking to subtract the amount of that recovery from the total amount the Court is recommending that the City is entitled to here. This option does not, however, mean that the Undersigned would automatically approve a reduction, as that possibility may hinge on several factors not yet known to the Court.

City would endeavor in good-faith to have the proposal heard before the Commission in June or July of 2009. [ECF No. 5-3, p. 1]. Pursuant to this agreement, the City placed the proposed ordinance on the agenda for the Commission Meeting on September 9, 2009. [ECF No. 53-1]. At the Commission Meeting, the Club's communications firm and attorney made presentations, followed by a presentation from the Miami Beach City Attorney. [*Id.*]. Members of the public commented on the proposal as well, including Griffith. [*Id.*]. At the close of the meeting, which lasted more than an hour, the Commission voted to deny the proposed ordinance. [*Id.*, at p. 16]. On October 1, 2009, pursuant to the Settlement Agreement, Plaintiffs voluntarily dismissed the 2008 Complaint with prejudice. [ECF No. 5-2].

The present action was removed to federal court on October 16, 2013. [ECF No. 1]. The Amended Complaint [ECF No. 18] alleged that after the 2008 Complaint was dismissed, the City has permitted third party clubs to serve alcohol and provide nudity. [*Id.*, at p. 4]. It alleged that the City had actual and constructive notice of these third party clubs' activities and that Griffith, on multiple occasions, gave notice to the City of the third party clubs engaging in this conduct without cabaret licenses, for which the City failed to take any remedial action. [*Id.*]. Count I of the Amended Complaint alleged an Equal Protection violation pursuant to 42 U.S.C. § 1983 for allowing the third party clubs to serve alcoholic beverages while providing nude entertainment without providing the Club the same clearance. [*Id.*, at pp. 4-5]. Count II of the Amended

Complaint alleged Breach of Contract for the City's alleged failure to comply with the Settlement Agreement -- specifically, for the City allegedly not providing an adequate forum to have the proposed legislation read and heard before the Commission and restricting the Club's right to discuss and present evidence in support of the proposed ordinance. [*Id.*, at pp. 5-6].

On June 19, 2014, Judge Lenard granted [ECF No. 45] the City's Motion to Dismiss [ECF No. 18] and dismissed the Amended Complaint with prejudice, finding that (1) Count I, the alleged Equal Protection violation, "unquestionably [arose] out of, relate[d] to, and involve[d] the subject matter of the 2008 Settlement Agreement, [and was therefore] barred by <u>res judicata</u>[,]" and (2) even if the City did prevent the Club from presenting sufficient evidence to support its proposed ordinance, the plaintiffs "knew it when they filed the Notice of Voluntary Dismissal With Prejudice[,]" and therefore Count II, for breach of contract, was **waived**. [ECF No. 45].

Plaintiffs filed a Notice of Appeal [ECF No. 46], but the Eleventh Circuit Court of Appeals dismissed [ECF No. 52] the appeal on August 29, 2014 for want of prosecution. Thereafter, the City filed this present motion for attorney's fees [ECF No. 53], alleging that Plaintiffs unreasonably re-litigated groundless claims, forcing the City to incur substantial attorneys' fees. Plaintiffs opposed the fees' motion, filing one response addressing entitlement (and their opposition thereto) [ECF No. 58] and a separate filing addressing the amount of fees [ECF No. 60]. Plaintiffs also filed a sur-reply. [ECF No.

69]. As noted above, Plaintiffs' former counsel filed his own response [ECF No. 59] concerning sanctions against him individually, but, that matter was settled separately at mediation [ECF No. 79].

A prevailing party is not ordinarily entitled to recover attorney's fees from its opponent. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). However, pursuant to 42 U.S.C. § 1988, "[i]n ay action to enforce a provision of section[] 1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Furthermore, under its inherent power, "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyeska*, 421 U.S. at 258-59) (internal quotations omitted).[3]

Because I conclude that the Plaintiffs' action was without foundation, I **respectfully recommend** that the City, as the prevailing party, **is entitled to attorney's fees under 42 U.S.C. § 1988, but** *not under* **the Court's inherent authority**. As outlined below, Plaintiffs pressed forward with an unsupportable civil rights theory. Plaintiffs pursued a complaint and an amended complaint which were barred by the release

---

[3]     The City's motion also seeks sanctions under 28 U.S.C. § 1927 and the Court's inherent authority against both Plaintiffs and their former counsel, Wolfe. As noted above, Wolfe and the City already settled their matter, and so the claim under Section 1927 (which applies only against counsel) is moot. The City's argument for a sanction under the Court's inherent power, though, is more complicated, because that argument is jumbled with its argument for sanctions under Section 1927. The Undersigned will address the City's arguments on those grounds and the appropriate legal standard below.

issued in connection with the Settlement Agreement between the parties. In addition, Plaintiffs filed their lawsuit even though they waived their right to challenge the City's performance under the Settlement Agreement by filing a Notice of Voluntary Dismissal with Prejudice (of an earlier lawsuit filed in federal court).

The District Court's dismissal order outlines, in significant detail, the myriad deficiencies in Plaintiffs' claims and describes Plaintiffs' theories and litigation conduct in powerfully negative terms. For example, the District Court explained that "**no matter how Count I is interpreted**, it is precluded by the terms of the Settlement Agreement and Release." [ECF No. 45, p. 12]. The District Court also held that "Count I **unquestionably** arises out of, relates to, and involves the subject matter of the 2008 Settlement Agreement, it is barred by <u>res judicata</u>." [*Id.*, at p. 13] (emphasis supplied). Accordingly, the Undersigned **respectfully recommends**, for the reasons outlined below, that the City's motion be **granted in part**.

## II.   ENTITLEMENT TO ATTORNEY'S FEES UNDER § 1988

### A.   <u>Legal Standard</u>

By statute, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee" in a Section 1983 civil right lawsuit. 42 U.S.C. § 1988(b). Although the statute does not provide different standards for awarding fees based on the identity of the prevailing party, the Supreme Court, relying on policy considerations and legislative history, has directed that district courts apply a

different standard depending on whether the prevailing party is a plaintiff or a defendant.

A prevailing plaintiff is virtually always entitled to attorney's fees, "unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968).

A prevailing defendant, however, may only recover fees "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *see also Sullivan v. School Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1188-89 (11th Cir. 1985). Importantly, in determining a prevailing defendant's entitlement to attorney's fees, the district court must avoid a post hoc analysis (i.e., looking at whether the plaintiff ultimately prevailed) and instead determine whether, at the outset, the plaintiff had "an entirely reasonable ground for bringing suit." *Christiansburg*, 434 U.S. at 422; *see also Jones v. Tx. Tech Univ.*, 656 F.2d 1137, 1145 (5th Cir. 1981). In other words, "[t]he plaintiff's action must be meritless in the sense that it is groundless or without foundation. The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (applying the *Christiansburg* standard to a Section 1983 action).

The Eleventh Circuit has identified several relevant factors for courts to consider on a § 1983 defendant's motion for fees, including "(1) whether the plaintiff established

a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Sullivan*, 773 F.2d at 1189. Even so, an award of fees is permissive, not mandatory, and the standards outlined above exist to "guide the district court's exercise of discretion." *Johnson v. Florida*, 348 F.3d 1334, 1350 (11th Cir. 2003).

Naturally, lack-of-merit determinations must be made on a case-by-case basis and will depend on the cause of action asserted, the preexisting legal framework, and the facts known or available to the plaintiff in a given lawsuit. *Sullivan*, 773 F.2d at 1189. Thus, whether the plaintiff had reasonable grounds for bringing suit will depend on the state of the law and the facts known to the plaintiff before filing suit in a particular case. *See id*.

When a lawsuit raises unsettled questions of law upon which reasonable jurist may disagree, a prevailing defendant should not be awarded fees. *See Sherman v. Babbitt*, 772 F.2d 1476, 1478 (9th Cir. 1985); *Tarter v. Raybuck*, 742 F.2d 977, 988 (6th Cir. 1984). When, however, the plaintiff institutes a lawsuit to re-litigate previously adjudicated issues or assert a claim that is legally groundless in view of settled law, a prevailing defendant may recover reasonable attorney's fees. *See, e.g., Head v. Medford*, 62 F.3d 351, 355-56 (11th Cir. 1995) (reversing the district court's refusal to award fees when the plaintiff's claim was based on establishing a "nonexistent property interest [that was] legally groundless" in view of settled law); *Carrion v. Yeshiva Univ.*, 535 F.2d

9

722, 726-29 (2d Cir. 1976) (affirming fees award when plaintiffs sued in federal court after "substantially the same" issues were decided in state court and noting that "in view of the ***failure of the previous litigation***" the plaintiff's counsel had reason to be aware that an award of fees was possible) (emphasis added).

Finally, the Eleventh Circuit has noted that fees are traditionally awarded when the plaintiff fails to introduce *any* evidence in support of his claim. *Sullivan*, 773 F.2d at 1189. On the other hand, so long as the plaintiff introduces *some* evidence in support of his claim, the action will generally not be considered frivolous for fees purposes. *Id*.

### B.    Plaintiffs' Civil Rights Claim Was Groundless

In granting the City's motion to dismiss, the District Court found, in essence, that Plaintiffs were pursuing claims that had been previously settled and adjudicated. The District Court found that Count I "*unquestionably* ar[ose] out of, relate[d] to, and involve[d] the subject matter of the 2008 Settlement Agreement." [ECF No. 45, p. 13 (emphasis added)].

My review of the record also indicates that the Plaintiffs merely attempted to recast their already-resolved-by-the-prior-settlement claim with different names and labels but under materially indistinguishable facts. In the end, Plaintiffs were not able to offer any legally sufficient reason why these findings do not weigh heavily in favor of awarding attorney's fees to the City.

10

Plaintiffs in this matter could never establish a *prima facie* case because their claim, from the outset, was barred by *res judicata*. Plaintiffs attempted to present specific facts and apply them to the specific elements of a Section 1983 cause of action, but *res judicata* barred the claim and there never was a legal basis for pursuing this cause of action.

Plaintiffs argue that they put forth evidence to support their claim and, in doing so, established a *prima facie* case. "[I]n cases where the plaintiffs . . . introduce evidence sufficient to support their claims, findings of frivolity typically do not stand." *Sullivan*, 773 F.2d at 1189 (citing *White v. South Park Indep. Sch. Dist.*, 693 F.2d 1163 (5th Cir. 1982); *Plemer v. Parsons–Gilbane*, 713 F.2d 1127 (5th Cir. 1983)). Plaintiffs are correct insofar as their complaint and response to the motion to dismiss were supported with specific facts corresponding to the legal causes of action that supported their case. However, from the very outset, the claim that this proffered evidence supported was already settled and released. Proffering evidence is insufficient to establish a *prima facie* case when said case has *already been dismissed* with prejudice.

In determining whether a *prima facie* case has been made, the Court is required to view the evidence in a light most favorable to the non-prevailing plaintiff. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1179 (11th Cir. 2005). In the instant case, the Undersigned could accept all of Plaintiffs' allegations as factually and legally accurate, yet still, Plaintiffs would not have established a *prima facie* case. Plaintiffs' cause of action is

barred by the Settlement Agreement and so no amount evidence or argument can support a claim under Section 1983. The District Court, in the Dismissal Order, did not even need to address the *substance* of Plaintiffs' civil rights claim because it was so clearly apparent on the face of the Amended Complaint that Plaintiffs' cause of action was <u>barred</u> by *res judicata*. Therefore, it is irrelevant whether Plaintiffs offered evidence to support their claim, because the claim itself was already moot.

A court can award "attorneys' fees under section 1988 [where] there [is] *no* legal basis for [a] claim." *McGregor v. Bd. Of Cnty. Com'rs for Palm Beach Cnty. Fla.*, 130 F.R.D. 464, 467 (S.D. Fla. 1990) (emphasis in original). *See also Head*, 62 F.3d 351 (plaintiff failed to establish property interest required to pursue federal civil rights claim and therefore the court found "plaintiff's federal due process claims were legally frivolous as a matter of law"). In *McGregor*, a Section 1983 claim arising out of an employment dispute, the court found that the plaintiff should have realized, through basic legal research, that the employee did not have a property interest upon which to invoke Constitutional protections. *Id.* at 466. The court therefore found *no legal basis* for the claim. Despite the presence of the proffered evidence to support the claim, the court determined that without legal basis, the claim was frivolous and the plaintiff was subject to an attorneys' fees penalty. *Id.* at 466-67.

Basic research here would have clued Plaintiffs into the fact that the broadly-worded Settlement Agreement they previously entered into *legally barred* them from

proceeding with another cause of action that arose out of the same set of operative facts (namely, their complaint about not being permitted to serve alcoholic beverages to their patrons while providing full nudity), *even if* they applied new labels to the claims. Accordingly, Plaintiffs failed to establish a *prima facie* case because their claims were frivolous as a matter of law.

The second and third factors in *Sullivan* also weigh in favor of the City. First, there is no evidence that the City tried at any point to settle this case. A court-ordered mediation was held in this matter, but as the City notes in its motion [ECF No. 53, p. 8], it never offered any affirmative relief to settle Plaintiffs' claims. Rather, it moved to dismiss both the initial complaint and the Amended Complaint, ultimately succeeding on its motion to dismiss the Amended Complaint. *See Bevan v. Lee Cnty.*, 224 F. App'x 880, 882 (S.D. Fla. 2007) ("Under the second prong, [the defendants] made no offer to settle. If [they] had believed that [plaintiff's] claims had merit, they might have tried to reach a settlement."). Therefore, this prong, too, supports the City's motion for fees.

And finally, the third *Sullivan* factor -- whether the court dismissed the case prior to trial -- weighs significantly in favor of the City. The District Court dismissed Plaintiffs' case at the earliest possible opportunity to do so: the motion to dismiss stage. The City's motion to dismiss the Amended Complaint is the 18th docket entry in this case, and was filed within two months of the lawsuit being filed by Plaintiffs. Thus, a dismissal at such an early stage of the proceedings -- and the strong language used in

13

the Court's Dismissal Order -- is even stronger evidence of the lack of merit in Plaintiffs'
action.

Accordingly, for the above reasons, the Undersigned **respectfully recommends**
that the City is entitled to attorneys' fees pursuant to Section 1988 for *at least* Plaintiffs'
pursuit of **Count I** of the Amended Complaint.

III.    ENTITLEMENT TO ATTORNEY'S FEES ON COUNT II

Count II of Plaintiffs' Amended Complaint is not considered *directly* under
Section 1988, as this claim does not seek relief under the Civil Rights Act. However, in
addition to attorneys' fees for baseless constitutional claims, a defendant may be
entitled to fees for addressing frivolous pendent state law claims based on the "same
course of conduct." *Church of Scientology of Calif. V. Cazares*, 638 F.2d 1272, 1290-91 (5th
Cir. 1981).[4] However, the circumstances of the present action and *Church of Scientology*
are not sufficiently analogous to apply here.

In *Church of Scientology*, the court found "it would be impossible to accurately
apportion the time [defendant's] attorneys spent on the civil rights claim and on the
nonfederal defamation claim." *Id.* at 1291. In that case though, the nonfederal claim for
defamation was not separated from the federal civil rights claim until the third
amended complaint was filed, *two years after* the original complaint was filed. *Id.*

---

[4]     *See Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206 ("decisions of the United States
Court of Appeals for the Fifth Circuit (the "former Fifth" or the "old Fifth"), as that
court existed on September 30, 1981, handed down by that court prior to the close of
business on that date, shall be binding as precedent in the Eleventh Circuit").

Because the nonfederal claim and federal claim were part of a single claim for the first two years of that litigation, it was therefore impossible for the court to accurately apportion the attorneys' time that went toward each claim for that time period.

In the present case, the time put toward each claim is much easier to apportion for several reasons. First, the breach of contract claim was an independent state claim from the very beginning of the lawsuit (initially, it was Count III of a three-count original complaint [ECF No. 1-2]). Second, this case featured only one amended complaint, which reduced a three-count complaint to a two-count complaint, and also clearly divided the federal civil rights cause of action from the state-based breach of contract claim. Third, this case was dismissed at a much earlier stage than *Church of Scientology*, and therefore with this simplified, easily-divisible Amended Complaint being dismissed at the earliest possible instance (the motion to dismiss stage), it is *not* an impossible task to divide the attorneys' fees expended among the various claims. Therefore, should the District Court find that the City is entitled to attorneys' fees *only* based on Section 1988, the application of the lodestar analysis (as the Undersigned demonstrates below) can accurately and fairly apportion the attorneys' fees among the two claims in the Amended Complaint.

Accordingly, the Undersigned **respectfully recommends** that the City is **not entitled** to attorneys' fees under Section 1988 **for Count II**.

Therefore, if the District Court were to adopt the Undersigned's above recommendation that Count I was frivolous and subject to an attorney's fees award for the City under Section 1988, the award should only be for fees expended in relation to the civil rights claim, not necessarily 100% of the fees incurred by the City this case. While Count II -- the accompanying breach of contract claim -- does not entitle the City to fees under the Civil Rights Act, the Court *could* sanction Plaintiffs with a fees award pursuant to its inherent authority upon a finding of bad faith in the pursuit of a frivolous claim.

However, the Undersigned finds that this situation does not warrant the imposition of sanctions against Plaintiffs pursuant to the Court's inherent authority and **respectfully recommends** that the District Court **deny** the portion of the motion seeking attorney's fees based on the non-civil rights claim (i.e. Count II).

A.   <u>Legal Standard</u>

As stated previously, pursuant to its inherent power, "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyeska*, 421 U.S. at 258-59) (internal quotations omitted). "In this regard, if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, . . .  as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement

of a court order[.]" *Id.* at 46 (internal quotations omitted). Accordingly, the Court's inherent power to impose an attorneys' fees award centers upon a finding of **bad faith**. *See In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995).

**B.**     **Analysis**

As noted above, the City's argument for sanctions under the Court's inherent authority is jumbled with its argument for sanctions under Section 1927. By using this approach, the City creates a less-than-certain portrait of the law and the facts concerning both grounds, jumping back and forth between arguments, while stringing together cases that stand for different concepts. [*See* ECF No. 53, p. 15 (the City supports its combination-1927/inherent power argument by stringing together a cluttered array of seven cases standing for sanctions in one context or the other -- but never for both -- in no particular order]. Because the City pursued the two arguments in this combined fashion, it is unclear to the Undersigned (without fully reading every case cited to see which of the theories was actually at issue) what exact authority the City is claiming supports sanctions against Plaintiffs and what authority supports sanctions solely against counsel under Section 1927.

The Undersigned will attempt to address all arguments and legal authority presented by the City that address the Court's *inherent authority* to impose sanctions against *Plaintiffs -- not* against Plaintiff's counsel and *not* based on Section 1927. First, the City cites to *Fitzgerald v. Regions Bank*, No. 5:13–cv–36–Oc–10PRL, 2014 WL 129066, at *5

(M.D. Fla Jan. 14, 2014), in which a Middle District of Florida court imposed sanctions pursuant to its inherent authority against the plaintiffs after plaintiffs and their counsel "were repeatedly advised—both by Defendant and the Court— that Plaintiffs' claims were frivolous." *Fitzgerald* differs greatly from this action in some major respects.

In the present matter, the *Court* never advised -- not once or repeatedly -- that the claims being pursued were frivolous and that Plaintiffs should stop pursuing them. In this matter, Plaintiffs were affirmatively informed by the Court that their case was without merit through the Court's order of dismissal [ECF No. 45], which was issued relatively early on in the case, and, after which, Plaintiffs did not improperly continue motion practice or pursue the same claims through new complaints.

Also, as far as parties and their counsel being on notice of the frivolous nature of their pursuits, the sanctioned parties in *Fitzgerald* had received a Rule 11 motion putting them on notice of the frivolous nature of their conduct, which they proceeded to ignore and, in bad faith, continued their case without merit. The present matter did not feature a Rule 11 motion, nor any other warning from the City or the Court for Plaintiffs to put Plaintiffs on notice of frivolous action (until the ultimate dismissal).

Furthermore, while Plaintiffs' counsel, Wolfe, as an experienced attorney, may be in a position to know that Count II was subject to waiver, the Court cannot just impute that knowledge onto Plaintiffs individually, since they rely upon the advice of counsel

in legal matters. Therefore, the Undersigned is not convinced that *Fitzgerald* is analogous to this case.

The City also cites to *Maid of the Mist Corp. v. Alcatraz Media, LLC*, 446 F. App'x 162 (11th Cir. 2011), where a district court imposed attorneys' fees award pursuant to its inherent authority when a defendant continued to file motions in a case that was closed when plaintiff prevailed on the merits three years before. In *Maid of the Mist*, the sanctioned party filed *dozens* of motions after his Rule 60(b) motion was denied, which the court deemed "totally frivolous." *Id.* at 164. The present case does not involve dozens of motions, nor does it involve post-judgment actions in the very same case.

While it is clear that Plaintiffs were pursuing frivolous, barred claims in a new lawsuit, it is not clear that Plaintiffs should be imputed with the legal knowledge that they waived their breach of contract claim years before *and* that pursuit of a new lawsuit on those grounds is frivolous, wanton and vexatious. Once again, while Wolfe, as an experienced attorney, may be considered knowledgeable of legal concepts such as waiver, such knowledge may not automatically impute upon the client relying on that counsel's advice.

Therefore, the Undersigned cannot determine that Plaintiffs, following counsel's advice, were acting in *bad faith* when they pursued this claim. In *Maid of the Mist*, there were dozens of baseless motions rejected by the court after a Rule 60 motion had been rejected; in the present matter, the case ended at the earliest possible stage based upon

the City's motion to dismiss, which was the 18th docket entry in the case. There is no equivalent record of the Court repeatedly denying Plaintiffs' baseless, harassing, frivolous motions here. Accordingly, the Undersigned is not convinced that *Maid of the Mist* provides a sufficiently analogous to justify a fees award against Plaintiffs under inherent authority.

Lastly (with regard to cases that the City cites to regarding the court's inherent authority against parties themselves), the City cites *Allapattah Sevs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1374 (S.D. Fla. 2005), where a Southern District court found a defendant engaged in bad faith by knowingly and recklessly asserting frivolous and bad faith defenses that had already been decided against the defendant. As with the other cases above, the court imposed the sanction based upon the party being on notice of the frivolous nature of actions. *Id.* at 1375 ("I conclude that Exxon and its attorneys knew, or should have known, that assertion of these affirmative defenses were legally and factually frivolous given Exxon's prior representations and the affirmance by the Eleventh Circuit."[5]). The City presented no evidence that Plaintiffs in this case *knew or*

---

[5]    It should be noted that this specific quote is from the portion of the opinion imposing *Rule 11* sanctions against Exxon and its counsel; however, it was based upon this same finding -- Exxon's *awareness* of the frivolous nature of its actions. The court invoked its inherent power in the very next paragraph to impose sanctions upon Exxon itself, along with its counsel.

*should have been imputed with the knowledge* that their breach of contract claim[6] was waived, thus subjecting themselves to a bad faith finding and attorneys' fees for pursuing a frivolous breach of contract claim.

While Plaintiffs certainly are charged with awareness of the Settlement Agreement which they signed, the basis of the breach of contract claim was the allegation that the City did not uphold its end of that bargain. The concept of waiver concerning the breach of contract claim is a legal principle that the Undersigned is wary of imposing knowledge of on Plaintiffs, where -- unlike *Fitzgerald*, *Maid of the Mist* and *Allapattah* -- Plaintiffs are not guilty of repeated, undaunted, contumacious conduct, but rather filed a single lawsuit that was barred by *res judicata* and waiver, which was dismissed at the earliest possible stage and not subject to extensive blatantly frivolous filings.

Accordingly, the Undersigned **respectfully recommends** that the District Court **deny** the City's motion with respect to imposing fees under the Court's inherent authority.

---

[6]     While it is true that Plaintiffs signed the Settlement Agreement on which Count I is based and may be imputed with the knowledge that they were barred from further pursuing *that claim*, the Undersigned is not addressing that Count with regard to the Court's inherent authority to impose fees because it has already been determined that, without a finding of bad faith, the pursuit of that frivolous claim subjects Plaintiffs to attorneys' fees pursuant to Section 1988.

IV.    **AMOUNT OF ATTORNEYS' FEES**

The City submitted its time records and explanation of the amount sought in its initial motion. [ECF No. 53]. Plaintiffs responded to the amount sought in their "Notice of Objections as to the Amount Claimed in Defendant City of Miami Beach's Motion for Attorneys' Fees and Sanctions and Incorporated Memorandum of Law." [ECF No. 60]. The City thereafter filed a reply addressing only the amount of fees sought. [ECF No. 83].

Before delving into the substance of the amount of fees to which the City should be entitled, the Undersigned will address the City's first argument on these grounds, which is that Plaintiffs filed to comply with Local Rule 7.3 requiring a good faith conferral on the amount of fees before filing an objection. The City asserts that it complied with Local Rule 7.3 by serving a copy of the draft motion for fees on Plaintiffs 30 days prior to the deadline for filing the motion, but when the City reached out to Plaintiffs to confer in good faith within 21 days of this service, Plaintiffs did not provide any specific objection to the amount. Plaintiffs do not dispute (or even address) this argument.

While this uncontested assertion certainly provides grounds for granting the City's requested amount of fees in full (or at least not considering the filed objections of

Plaintiffs),[7] "the Court has discretion whether to require strict adherence to Local Rule

7.3 and may consider the unique facts of this case when deciding whether to do so."

*Morris v. Ariz. Beverage Co.*, No. 03–60907 Civ, 2005 WL 5544961, at *8 (S.D. Fla. Feb.9,

2005); *see also Kowalski v. Jackson Nat. Life Ins. Co.*, No. 12–60597–CIV, 2014 WL 4101567

(S.D. Fla. Aug. 20, 2014). This is especially true where the party seeking to enforce strict

adherence to the rule "has identified no prejudice suffered from the alleged local rules

violation." *Kowalski*, 2014 WL 4101567, at *4. The City has suffered no apparent

prejudice from Plaintiffs' lack of adherence to Local Rule 7.3, and the Undersigned

therefore **recommends** that the District Court **not grant** the total amount of fees

requested **based solely upon this rules violation**.

The analysis of what constitutes "a reasonable attorney's fee as part of the costs"

under 42 U.S.C. § 1988 begins with a determination of the "lodestar" figure, which is the

product of the number of hours reasonably expended and the reasonable hourly rate for

work performed by similarly situated attorneys in the community. *R.L. v. Miami-Dade*

*Cnty. Sch. Bd.*, No. 07–20321, 2013 WL 2157156, at *9 (S.D. Fla. May 17, 2013) (citing

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). The

prevailing party applying for the fees bears the burden of "establishing entitlement and

---

[7]     The Court is still obligated, however, to ensure that the fees awarded do comply
with the law, and as is described in the following recommendation, the finding that the
City is not entitled to fees regarding the state breach of contract claim has a *significant*
impact on the amount of fees that should be awarded, regardless of Plaintiffs'
compliance with the local rules in their objection to the amount.

documenting the appropriate hours and hourly rates." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citing *Hensley*, 461 U.S. at 437 (1983)).

The Court is itself an expert on the question of the reasonableness of an attorney's hourly rate and I also may use my "own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *see also Crescenzo v. Healthcare Revenue Recovery Grp., LLC*, No. 11-60384-CIV, 2012 WL 291431, at *2 (S.D. Fla. Jan. 31, 2012).

When determining the hourly fee, the Court must "step[ ] into the shoes of the reasonable, paying client, who wishes to pay the **least amount necessary** to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008) (emphasis added); *Tiara Condo Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1364 (S.D. Fla. 2010) (internal citations omitted). To be sure, there are South Florida law firms which charge the same hourly fees as the Plaintiffs' attorneys. And there are South Florida firms which may at times charge even higher hourly rates. But there are also similarly experienced and competent law firms which charge *lower* hourly rates, and those are the rates to be used when calculating an hourly fees award. *See Procaps S.A. v. Patheon, Inc.*, No. 12-24356, 2013 WL 6238647, at *14 (S.D. Fla. Dec. 3, 2013).

24

The City requests attorneys' fees for the work of six separate attorneys on the case, seeking $108,093.10 for 303.9 hours of work. [ECF No. 53, pp. 17-18]. The Undersigned will first address the reasonableness of the rates for each individual attorney and then separately assess the reasonableness of the hours expended by the team of attorneys. The Court will then determine the reasonableness of the fees in light of the City's entitlement on only one Count of the Amended Complaint.

A.      **Reasonable Hourly Rate**

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by attorneys with reasonably comparable skills, experience, and reputation. *Id*. at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984)). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id*. Moreover, "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id*. The rate can be supported by direct evidence of charges by other lawyers in like circumstances, opinion evidence, or precedent. *See id*.

The City notes at the outset that its outside counsel significantly reduced their standard hourly rates for work performed for the City. [ECF No. 53, p. 17]. The City provided a chart that lists the six attorneys, and it includes their experience/qualifications and their "discounted hourly rates." The City seeks to compensate the following legal professionals at these respective rates: Richard

Ovelman, $548/hour; Jason Kairalla, $370/hour; Clifton Gruhn, $345/hour; Justin Wales, $275/hour; Namrata Joshi, $265/hour; and Debra Katz (litigation paralegal with over 30 years of experience), $235/hour. [*Id.*, at pp. 17-18]. Concerning the discounted nature of the rates, the City notes that, for example, Mr. Ovelman's standard billing rate is $660/hour and Mr. Kairalla's standard billing rate is $445/hour.

Plaintiffs do not object to the rates charged by the attorneys. Therefore, based upon the City's and Plaintiffs' representations, as well as the Undersigned's own experience, *see Norman*, 836 F.2d at 1303; *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001), the Undersigned finds that the rates charged by the City's counsel in this matter are reasonable and should be accepted by the District Court.

**B.**     **Reasonable Hours Expended**

The City seeks compensation for 303.9 billed hours on this case. [ECF No. 53, pp. 17-18]. In evaluating the reasonableness of hours expended, the Undersigned should exclude from the fees award compensation for hours that are "excessive, redundant or otherwise unnecessary." *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 434). The Court must omit those hours which would be unreasonable to bill to a client "irrespective of the skill, reputation, or experience of counsel." *Id*. The Court must also subtract time expended on "discrete and unsuccessful claims." *Id*. at 1302. The Undersigned may determine a reasonable award based on his own experience. *Id*. at 1303.

Here, as set out in the motion and attached time sheets, the City seeks 33.2 hours for attorney Ovelman, 123.4 hours for attorney Kairalla, 62.5 hours for attorney Gruhn, 39.9 hours for attorney Wales, 38.5 hours for attorney Joshi, and 6.4 hours for paralegal Katz. [ECF Nos. 53; 53-3]. Plaintiffs object to alleged "excessive, duplicative, and non-chargeable time entries," which it calls "tantamount to gross and excessive overbilling." [ECF No. 60, p. 1 (internal quotations omitted)]. Generally, Plaintiffs argue that the City filed just two substantive motions in this case, and so its time entries are excessive and feature the work of up to six attorneys "double and triple tasked with the same responsibilities." [*Id.* at pp. 1-2]. The Undersigned will address each of the specific entries that Plaintiffs point to as excessive in turn; however, it is first necessary to address the implications of the Undersigned's recommendation that fees *not* be awarded for Count II of the amended complaint, because this significantly impacts the Undersigned's analysis of Plaintiffs' specific objections to time entries.

1.     *Implication of Not Granting Fees for Count II of the Amended Complaint*

For most of the time that this case was pending (the Amended Complaint was filed approximately one month after the case was removed to federal court), Plaintiffs were pursuing a two-count complaint, seeking damages for 1) civil rights violations, and 2) a breach of contract. As recommended above, the City *should not* be entitled to fees based upon the non-federal civil rights claim. Because the City has submitted billing records covering an extensive period of time, and because those records do not always delineate which specific issue was being addressed, it is impossible for the

Undersigned to make line-by-line deductions for time billed on a claim for which the City is not entitled to fees.

Rather than make line-by-line reductions in hours for a case where excessive time was billed, a court "may engage in 'an across-the-board cut' so long as it provides adequate explanation for the decrease." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). The breach of contract claim encompassed half of the causes of action being pursued by Plaintiffs in this lawsuit.[8] Although it might be logical to simply and automatically presume that this means the breach of contract claim therefore represented half of the work and thus necessitates a 50% across-the-board cut, the Undersigned reviewed the pleadings to substantiate the proportion of the necessary cut.

To find concrete examples as to how the work was divided, the Undersigned reviewed the original complaint [ECF No. 1-2], the Amended Complaint [ECF No. 14], the first motion to dismiss [ECF No. 5] and the motion to dismiss the Amended Complaint [ECF No. 18]. As noted previously, the initial complaint featured *three* causes of action. In that complaint, though, Plaintiffs presented their Section 1983 claim (Count

---

[8]     The Undersigned notes that the initial complaint filed in state court [ECF No. 1-2] did include a *third* count for violation of a Florida Statute. This count was voluntarily withdrawn when the Amended Complaint was filed approximately one month after this action was removed to federal court. Because the Undersigned is not addressing entitlement to attorneys' fees based upon this claim (as the District Court did not consider it in the dismissal) and because it was withdrawn so early in the life of this litigation, the Undersigned does not consider it to be a particularly significant factor in crafting the "across-the-board cut." Accordingly, the Undersigned notes that it has been taken into consideration, however, its impact on crafting an overall percentage cut in fees is minimal.

I) and the breach of contract claim (Count III of the initial complaint) in approximately the same number of pages (1 page each).

In the City's motion to dismiss the original complaint [ECF No. 5], the Undersigned finds that approximately the same amount of pages was spent addressing each of the relevant claims. In particular, the City's first argument concerning *res judicata* and the release language of the Settlement Agreement addressed both the breach of contract claim and the civil rights claim (although it is clear that the City was focusing more heavily on Count I in that portion). [ECF No. 5, pp. 3-4 (approximately a page and a half)]. The heavier focus on Count I in this section is offset, though, when one considers that Part B, which addresses Count I exclusively, is approximately one page long [*Id.*, at pp. 4-5], while Part D, addressing just the breach of contract claim, is approximately one and a half pages long. A view of the totality of this motion indicates that it focuses equally on the two relevant claims.

The Amended Complaint [ECF No. 14] provides approximately equal space to the breach of contract claim and the civil rights claim, with the breach of contract claim occupying a few more lines. The motion to dismiss the Amended Complaint [ECF No. 18] once again begins with a section that addresses both Counts I and II, but focuses more heavily on Count I. [*Id.* at pp. 2-5]. The section focusing exclusively on Count I is approximately 2 pages long [*Id.* at pp. 5-7], while the section addressing Count II is approximately one and a quarter pages long [*Id.* at pp. 7-8]. While this does indicate

that the City focused more resources on the civil rights portion of the claim for this motion to dismiss, the reply [ECF No. 33] to Plaintiffs' opposition focuses more heavily on the breach of contract claim, spending approximately 3 pages addressing that claim, while spending less than a page and a half on the civil rights claim.

Based on the Undersigned's view of the pleadings as an indicator of the work that the City's attorneys put in to address each claim, it is apparent that equal work was done on the civil rights claim and the breach of contract claim. The Undersigned extrapolates this finding to conclude that approximately half of the work put into the case, whether it be for the two motions to dismiss,[9] discovery, mediation and assorted other case work, research and communication (including, with other attorneys within the law firm, opposing counsel and the client), concerns the breach of contract claim. Therefore, the Undersigned deems it necessary to impose a **50% across-the-board cut** to the City's requested fees, to be calculated *after* the Undersigned addresses each of Plaintiffs' specific objections.

---

[9]     Plaintiffs disingenuously downplay the amount of work put into this case by noting that only two motions were ever filed by the City as an example of the simplicity of the proceedings. The Undersigned, however, notes that the case proceeded for approximately *eight months* before the District Court granted the motion to dismiss the Amended Complaint, and during that time, it was scheduled for trial and a mediation was held. Therefore, it is only natural that counsel would be working on different aspects of the case throughout that time period, *even if* such work was not necessarily documented on the docket sheet. The Undersigned will still address the specific time entries that Plaintiffs deem excessive, but it must be noted beforehand that it is not at all unusual for counsel to bill work that may not necessarily end up publicly filed.

2.      *Plaintiffs' Specific Time Entry Objections*

Plaintiffs briefly object at the outset to time that the City's counsel spent reviewing a video of the City Commissioners' meeting where the Club presented its proposed ordinance. [ECF No. 60, p. 2]. Plaintiffs claim that a total of four attorneys viewed the video for approximately 6 hours. [*Id.*]. The Undersigned finds that review of the DVD and transcript of a meeting constitutes reasonable activity in a case that partially centers on the events that transpired at said meeting. While it is true that the events of the meeting are primarily concerned with Count II of the Amended Complaint, the Undersigned has already addressed the implications of that Count on the fees recommendation, so it is not necessary to address each and every instance where the City's counsel may or may not have worked on a portion of the case for which they are not entitled to fees.

Plaintiffs next object to the City billing more than 15 hours for a Rule 11 or Rule 57.105 motion that was never filed. [ECF No. 60, p. 2]. But the City notes that only two of the five time entries that Plaintiffs cite to actually refer to a Rule 11 motion, and the time billed constitutes approximately only one hour. [*See* ECF No. 53-3, pp. 2, 42]. The Undersigned's review confirms this to be the case. In a federal civil rights action, the Undersigned does not find it unreasonable for a party to spend an hour researching a Rule 11 motion and to not file it. Furthermore, because a prevailing party is entitled to

compensation for litigating a Section 1988 fees award, the Undersigned also confirms the reasonableness of the hours billed for that purpose. *See Villano*, 254 F.3d at 1309-10.

Plaintiffs next object to the 33 hours billed for drafting the original motion to dismiss [ECF No. 5]. [ECF No. 60, pp. 2-3]. First, Plaintiffs contend that the City should only be compensated for the portion of the motion that addressed the federal civil rights action. The Undersigned, through the across-the-board cut recommended above, has already addressed that objection. Furthermore, the Undersigned finds that expending 33 hours on a motion to dismiss a federal civil rights action that was tied to extensive prior litigation is a reasonable number of hours.

Plaintiffs further object to another 33 hours that the City spent drafting its second motion to dismiss [ECF No. 18]. [ECF No. 60, p. 3]. Plaintiffs' calculation of the hours expended on this motion is inaccurate, however, because they include time spent both on the motion itself *and* the reply brief. The motion to dismiss the Amended Complaint was filed on December 23, 2014; up until that point, the City's counsel only billed 14.2 hours on the motion. The entries thereafter concerning the motion to dismiss (entered on January 17, 27, 28 and 30, 2014) [ECF No. 53-3, pp. 24, 27] are all related to the *reply* and not the motion itself.

Furthermore, Plaintiffs point to a time entry of 1.1 hours from February 3, 2014; however, there is no entry on that date. Accordingly, having reviewed the time entries, the Undersigned finds that 14.2 hours spent on a motion (ultimately successful) to

dismiss is a reasonable amount, particularly when one considers the effect of the across-the-board cut.

Plaintiffs next object to 9 hours of time that they classify as "purely administrative matters," for which the City is allegedly not entitled to compensation. First, Plaintiffs offer no definition of "purely administrative matters," point to no case law or statute concerning this issue which would make such matters non-compensable, nor do they specify which portions of those time entries are administrative. So, on that ground alone, the Undersigned has no basis to analyze objections to these entries. Furthermore, the time entries cited to present no "red flags" for time that is not compensable. The entries to which Plaintiffs refer show analysis of legal issues, communications regarding strategy, analysis of Orders, and drafting dismissal motions, among other legal tasks. [ECF No. 53-3, pp. 1, 2, 4, 5, 11, 23]. These hours are all compensable.

Plaintiffs broadly object to 14 hours spent by counsel discussing the case with their client and 20 hours spent "meeting and talking amongst themselves." [ECF No. 60, p. 4]. The Undersigned rejects both of these objections. Once again, Plaintiffs point to no case or statute that excludes such activities from compensable time under Section 1988, and thus, the Undersigned has no basis to conclude that this time is automatically unreasonable.

It would make no sense if counsel were not able to consult with their client about defending the lawsuit. Similarly, it would be odd indeed if lawyers could not discuss a lawsuit with other lawyers on the legal team. Lawyers are not expected to labor in intellectual silos, working without interaction with other attorneys in the firm. In a complex antitrust lawsuit with 20 attorneys assigned for each side, for example, it would be impractical, illogical and short-sighted if the attorneys were not allowed fees for analyzing the complex factual and legal issues through comprehensive discussions. If there were a rule banning fees for time spent strategizing with other attorneys, then attorneys would either forego critical analysis (a scenario which could adversely affect the client's position in the lawsuit) or have to work without reimbursement (an unfair result).

Therefore, time reasonably spent on discussions with the client and other attorneys is compensable. *See Weissinger v. Murray*, No. 1:06–CV–1544–TWT, 2009 WL 1971612, at *6 (N.D. Ga. July 2, 2009) ("compensable activities include . . . productive attorney discussions and strategy sessions"). So, as a general matter, counsel are entitled to be compensated for strategy sessions and internal discussions.To be sure, there may certainly be situations where lawyers spend too much time talking amongst themselves about the case, but this is not such a scenario.

As to the specific entries cited, the Undersigned's review finds that 20 hours and 14 hours spent strategizing on a federal civil rights case that was based upon a previous federal case is reasonable.

Plaintiffs next object to 3.5 hours spent on the Notice of Removal [ECF No. 1], claiming it is excessive in light of the brevity of the document. The Undersigned has reviewed the specific entries [ECF No. 53-3, p. 3] and the Notice itself and finds that the time spent analyzing this issue, drafting the notice and conferring with Plaintiffs concerning removal is reasonable and compensable.

Plaintiffs next object to 2 hours spent on an unopposed motion for extension of time. [ECF No. 60, p. 5]. If this were in fact the case, the Undersigned might deem it unreasonable, however, one of the time entries that Plaintiffs point to does not exist (.3 hours on December 8, 2013), and another (.4 hours on December 11, 2013) concerns reading the actual Order on the motion and working on the actual motion to dismiss the amended complaint. [ECF No. 53-3, p. 18]. Therefore, Plaintiffs' objection concerns only 1.3 hours spent drafting a motion for extension of time and conferring with opposing counsel on the matter. While this may strike the Undersigned as slightly more than expected, it does not enter the realm of unreasonable. Accordingly, the Undersigned rejects this objection as well.

Plaintiffs next contend that the City spent 10.5 hours "preparing a Witness List" even though the City said it had no witnesses to present in the case. [ECF No. 60, p. 5].

While it is true that the City never formally submitted a witness list in this case, preparing a case for trial involves many tasks that may not ultimately result in an entry on the docket sheet. Accordingly, the Undersigned finds this time to be reasonable and compensable.

Plaintiffs next object to 4.3 hours spent on matters unrelated to this case. [ECF No. 60, p. 5]. The City ceded this point concerning the 2.3 hours billed by attorney Wales on January 31, 2014 and withdrew its request for those hours. The Undersigned will therefore subtract $632.50 from the total compensable hours before applying the across-the-board cut. As to the other hours cited to by Plaintiffs, there is no evidence that those relate to another case at all; they are all related to preparation for the mediation. The Undersigned therefore rejects this argument and finds the remaining 2 hours compensable.

Plaintiffs further contest the 9 hours spent by the City's counsel working on a mediation, claiming they were almost solely related to a different case. [ECF No. 60, p. 5]. The Undersigned's review finds no evidence that these time entries concern mediation in another case. The one specific reference to a mediation date in these entries cites to a mediation to be held on April 14, 2014 [ECF No. 53-3, p. 34], which is in fact the date the mediation in *this case* was held [ECF No. 38]. The Undersigned finds time spent preparing for this mediation was reasonably expended and rejects this objection.

Plaintiffs also object to 42.9 hours expended by the City's counsel drafting a Motion for Summary Judgement that was never filed. The dismissal order in this case was entered on June 19, 2014. [ECF No. 45]. The deadline for filing dispositive motions in this case was originally June 9, 2014 [ECF No. 23], which was later extended to June 30, 2014 [ECF No. 44]. Just because the dismissal motion was pending does not mean that a party and its counsel should stop working on a case. Accordingly, it is entirely reasonable that the City would spend this amount of time preparing its dispositive motion, as that is an uber-critical stage of a case. The City should not be expected to wait until the last minute to begin work on this motion. Therefore, the mere fact that City never filed this motion does not make the time not compensable. *See Hickory Farms, Inc. v. Snackmasters, Inc.*, 2008 WL 4542961, at *5 (N.D. Ill. Apr. 2, 2007) ("In short, the applicable rule does not foreclose recovery for attorney time spent on work product that does not ultimately see the light of day.").

Finally, Plaintiffs argue that time spent on the fees/sanctions motion is not compensable, contesting 64 billed hours. Plaintiffs point to no case law or statute which stands for this principle. This must be so because the case law stands for the exact opposite proposition. As the Undersigned already noted above, time spent on such motions is compensable under Section 1988. *See Villano*, 254 F.3d at 1309-10 ("party is entitled to reasonable compensation for litigating a § 1988 award"). Accordingly, the Undersigned rejects this objection.

C.     __Total Award Recommended__

To conclude, the Undersigned finds that Plaintiffs' objections to the reasonableness of the hours sought are, for the most part, not convincing. Accordingly, the Undersigned will subtract $632.50 from the total compensable hours for the 2.3 hours by attorney Wales that the City ceded as being from an incorrect case. This leaves the City with a total award of $107,460.60 *before* the application of the across-the-board cut.

Because the Undersigned finds that the City should be awarded only for Count I (the federal civil rights claim), the Undersigned therefore **applies a 50% across-the-board cut** to the City's fees, and ultimately **respectfully recommends** that the City is entitled to attorneys' fees in the **amount of $53,730.30**.

V.     **CONCLUSION**

Plaintiffs lacked reasonable grounds for bringing their lawsuit under federal civil rights law. Plaintiffs' action was unreasonable and without foundation, even though not necessarily brought in subjective bad faith. It would be unfair for the City to bear the cost of defending this lawsuit.

All of the relevant factors outlined by controlling appellate courts weigh in favor of awarding attorney's fees to the City.  The particular circumstances of this litigation also weigh in favor of an attorney's fees award to the Defendant.  I therefore conclude that a discretionary award of attorney's fees is appropriate in this instance.

Accordingly, the Undersigned **respectfully recommends** that:

1)      The City's motion for attorneys' fees be **granted in part**;[10]

2)      The City should be awarded fees under Section 1988 for having to defend a frivolous claim (Count I) for violation of Section 1983, but not for defending the accompanying state law breach of contract claim (Count II); and

3)      The amount of fees awarded should be $53,730.30.

Additionally, I *also* **recommend** that the City be given the opportunity to file a supplemental fees request, to cover the fees incurred since the time listed in the initial motion. In some cases, I might also suggest that the parties mediate the additional amount of the fees, but, given the lack of progress at the mediation, this procedure will not be followed here.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have fourteen (14) days after being served with a copy of this Report and Recommendation to serve and file written objections, if any, with the Joan A. Lenard, United States District Judge.  Each party may file a response to the other party's objection within 14 days of the objections.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this report and bar the parties from attacking on appeal the factual findings contained herein.  *Resolution Trust*

---

[10]      As noted above, this amount is subject to the caveat that Plaintiffs may subtract the City's recovery for fees against Wolfe from this recommendation.

*Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (*citing LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988)).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, this 10th day of August, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Joan A. Lenard
All counsel of record